UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CLAUDIA DIFOLCO,                                   :
                                                   :     06 CV 4728 (LAP)
Plaintiff,                                         :
                                                   :
     v.                                            :
                                                   :
MSNBC CABLE L.L.C., RICK KAPLAN,                   :
SCOTT LEON, and CASSANDRA BROWNSTEIN,              :
                                                   :
                                                   :
Defendants.                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF MSNBC CABLE L.L.C.'s MOTION TO DISMISS COMPLAINT

Julie Rikelman (JR 4888)
NBC UNIVERSAL, INC.
30 Rockefeller Plaza, Rm. 1010E
New York, N.Y. 10112
(212) 664-4167 (phone)
(212) 664-6572 (fax)

Counsel for MSNBC Cable L.L.C.

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Table of Contents……………………………………………………….. | i |
| Preliminary Statement……………………………………………….. | 1 |
| Factual Background……………………………………………………. | 1 |
| Argument………………………………………………………………. | 5 |
|    I. Standard for Dismissal Under Rule 12(b)(6)………………….. | 5 |
|    II. The Court Should Dismiss DiFolco's Claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (Counts I and II) Because DiFolco Repudiated Her Contract with MSNBC………………………………………………. | 6 |
|       A. DiFolco Repudiated Her Two-Year Employment Contract and Therefore Discharged MSNBC from Any Further Performance Under the Contract………………. | 6 |
|       B. DiFolco's Resignation Prevents Her from Obtaining Any Damages as a Result of the Termination of Her Employment with MSNBC………………………… | 9 |
|       C. DiFolco's Claim for Breach of the Covenant of Good Faith and Fair Dealing Should Be Dismissed as Redundant of Her Breach of Contract Claim………………………….. | 10 |
|    III. The Court Should Dismiss DiFolco's Claim for Tortious Interference with Contractual and/or Prospective Business Relations (Count III) Because DiFolco Has Alleged No Contract or Other Business Relations with Which MSNBC Could Have Interfered……………………………………………. | 11 |
|    IV. The Court Should Dismiss DiFolco's Defamation Claim (Count IV) Because the Statements Alleged Are Either True or Protected Opinion and Therefore Not Actionable……………. | 12 |
|    V. The Court Should Dismiss DiFolco's New York Labor Law Claim (Count V) Because It Depends on DiFolco's Breach of Contract Claim, Which Is Legally Meritless…………… | 17 |
| Conclusion……………………………………………………………….. | 18 |

MSNBC hereby moves to dismiss Plaintiff Claudia DiFolco's Complaint under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

DiFolco, a former on-air correspondent for two MSNBC entertainment shows, has sued MSNBC for breach of her employment contract and other claims related to her departure from the company. DiFolco's breach of contract claim is meritless because DiFolco resigned from her position at MSNBC well before her contract was set to expire. By resigning early, DiFolco broke her contract and is in no position to hold MSNBC liable for breach of that contract.

DiFolco's other claims are equally invalid. Although DiFolco includes a cause of action for tortious interference, the Complaint makes no mention of another contract with which MSNBC could have interfered, and the documents referenced in the Complaint show that no such contract existed. Similarly, her defamation claim concerns statements that are not defamatory as a matter of law because they are either true or protected opinions. In short, DiFolco has no legally sound claims, and the Court should dismiss the Complaint in its entirety.

## FACTUAL BACKGROUND[1]

According to the Complaint, Plaintiff Claudia DiFolco is an independent television broadcast artist. Complaint at ¶ 4. Defendant MSNBC, a joint venture between Microsoft Corporation and NBC Universal, Inc., is in the business of cable television broadcasting. *Id.* at ¶ 5.

---

[1] As required on a motion to dismiss, MSNBC has accepted as true all of DiFolco's allegations in the Complaint.

In early 2005, MSNBC was planning to launch two new entertainment shows, "MSNBC at the Movies" and "MSNBC Entertainment Hot List." *Id.* at ¶ 14. MSNBC hired DiFolco to be the Los Angeles-based correspondent for these two new shows and to work with Sharon Tay, who hosted the shows from MSNBC studios in New Jersey. *Id.* at ¶ 15.

MSNBC and DiFolco entered into a two-year employment contract with an effective start date of January 17, 2005. *Id.* at ¶ 16. "This agreement contractually established the compensation and other terms and conditions of Ms. DiFolco's employment with [MSNBC] for the ensuing two years." *Id.* A copy of the contract, which is governed by New York law, is attached.[2] *See* Exh. A to Declaration of Julie Rikelman.

The contract provided that its term would "be divided into two (2) consecutive cycles of fifty-two (52) weeks each." Exh. A at ¶ 4(a). The first cycle ended on January 16, 2006, and the second cycle ended on January 16, 2007. *Id.* Further, the contract stated that "MSNBC shall have the right to terminate this Agreement effective at the end of the first cycle by giving Artist written notice not less than sixty (60) days prior to the end of such cycle." *Id.* Thus, MSNBC had the unilateral right to terminate DiFolco's employment in 2006, after one year. *Id.*

---

[2] Documents directly referenced in the Complaint, particularly contracts that lie at the center of a litigation, may be considered by the Court upon a motion to dismiss. *See, e.g., Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. PLC*, 298 F.3d 136, 140 (2d Cir. 2002); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002).

2

The contract did not give DiFolco the right to terminate after the first cycle. *Id.* Therefore, under the contract, DiFolco was obligated to work for the full two-year term, until January 16, 2007.

DiFolco was unhappy with her working environment at MSNBC. She alleges that she "was placed in the untenable position of attempting to follow the recommendations of one manager [MSNBC President Rick Kaplan] to advance her already successful career, while another manager [MSNBC Executive Producer Scott Leon] canceled her shoots and on-air stories in reprisal for Ms. DiFolco following those recommendations." Complaint at ¶ 23.

On August 23, 2005, seven months into her contract, DiFolco emailed MSNBC President Rick Kaplan and stated her intention to leave her position at MSNBC. *Id.* at ¶¶ 37-38. She wrote:

> i'm planning on working out of nj next friday 9/2, so i can meet with you, at your convenience, anytime thursday. **unfortunately, it really saddens me to say that after much considerable thought, it is to discuss my exit from the shows. . . . i want to make sure i do this in the least disruptive manner possible and give you ample time to replace me. . . . i'm so sorry.**[3]

Exh. B to Declaration of Julie Rikelman (emphasis added).

One day later, on August 24, DiFolco sent a follow-up email to Kaplan. Complaint at ¶¶ 41-43. In that second email she said: "to be clear, I did not resign yesterday and was merely giving you significant notice of my intention so you could begin thinking about alternatives for next year." Exh. B.

---

[3]   In the Complaint, DiFolco quotes from and relies upon these emails, *see* Complaint at ¶¶ 37-45, and thus the Court can consider them in deciding this motion. *See supra* at n. 2.

3

Kaplan responded to DiFolco on August 28. Complaint at ¶ 44. His email to her, in its entirety, states:

> My complete impression is that you have resigned . . . and offered the courtesy of working out an exact out-date . . . I made Scott [Leon] aware of t6his [sic] . . . and we feel that sooner is better since your obvious intent is to leave. Best for all to do it quickly . . . I'm disappointed . . . to say the least . . .

Exh. B (ellipses in original).

On August 31, DiFolco sent Kaplan a final email. This last email explained her August 23 and 24 emails as follows: "It was my intention to give you long-term notice that I was terribly disappointed in the way I was treated and was not planning on returning for the second year of my contract." *Id.*

Based on DiFolco's emails, MSNBC made the decision to terminate DiFolco's employment before the end of her first contract year. It sent a proposed separation and release agreement to DiFolco through her agent. Complaint at ¶ 45. DiFolco remained on MSNBC's payroll until September 16, 2005.

DiFolco alleges that on August 31, 2005, after her emails to Kaplan, defendants caused to be reported on an internet website that she had resigned from MSNBC "in the middle of her contract." *Id.* at ¶ 51. Similarly, the Complaint alleges that on September 3, 2005, defendants caused another website to report that "[l]uscious Claudia DiFolco has quit MSNBC in the middle of her contract, leaving Sharon Tay as the sole host of 'Entertainment Hotlist' and 'At the Movies.'" *Id.* at ¶ 52. Finally, the Complaint states that on September 4, 2005, defendants caused the following statement to appear on a

4

third website:

> Claudia DiFolco, is one of the new breed of journalists who believes that cleavage, over time [sic] in the make up chair and a huge desire to become a star (instead of reporting on them,) is how you pay your dues. I have heard that throughout her irrelevant career at MSNBC, she constantly ignored directions from news producers during live shots, refused to do alternate takes for editing purposes, pouted like a spoiled child and never was a team player.

*Id.* at ¶ 53.

In May 2006, DiFolco sued MSNBC, and MSNBC employees Rick Kaplan, Scott Leon, and Cassandra Brownstein, for claims arising out of her departure from MSNBC. On June 5, 2006, DiFolco served MSNBC, through its attorney, with the Complaint and Summons. MSNBC filed a Notice of Removal to this Court on June 20, 2006. As of that date, no other defendant had been served. MSNBC now moves to dismiss all of the claims in the Complaint.

## ARGUMENT

### I.   Standard for Dismissal Under Rule 12(b)(6)

A court should grant a motion to dismiss under Federal Rule 12(b)(6) if, taking all the complaint's allegations as true and viewing them in the light most favorable to the plaintiff, the court concludes that the plaintiff has failed to state a claim that would entitle her to relief. *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) (dismissing complaint). Conclusory allegations, unwarranted deductions of fact, and conclusions of law are not accepted as true and are not sufficient to state a claim. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (dismissing complaint). Rather, a complaint must set forth specific facts that, if proven, would warrant the relief sought. *Id.*

Here, DiFolco has failed to state a claim for at least three reasons. First, DiFolco cannot recover against MSNBC for breach of contract because she repudiated her contract by resigning from her position. DiFolco's claim for breach of the covenant of good faith and fair dealing and her New York Labor Law claim fall with her breach of contract claim. Second, DiFolco has failed to allege any of the elements required to establish tortious interference by MSNBC. Third, DiFolco's defamation claim is legally meritless because the challenged statements are either true or protected opinion and therefore not actionable. Thus, the Court should dismiss all of DiFolco's claims.

## II. The Court Should Dismiss DiFolco's Claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (Counts I and II) Because DiFolco Repudiated Her Contract with MSNBC

In Counts I and II of the Complaint, DiFolco claims that MSNBC breached its employment contract with her and breached the covenant of good faith and fair dealing implied in the contract. The Court should dismiss both of these claims as a matter of law.

### A. DiFolco Repudiated Her Two-Year Employment Contract and Therefore Discharged MSNBC from Any Further Performance Under the Contract

DiFolco cannot recover against MSNBC for breach of contract because DiFolco repudiated her contract with MSNBC. As discussed above, DiFolco's employment contract with MSNBC obligated her to remain in her position for a full two years. Exh. A at ¶ 4(a). In late August 2005, however, DiFolco told MSNBC that she was planning to leave her position, in violation of her contract.

On August 23, DiFolco wrote to Kaplan that she wanted to discuss her "exit from the shows" and was giving advance notice so that Kaplan would have "ample time to

6

replace [her]." Exh. B. On August 31, she confirmed her plans to resign by again writing to Kaplan: "It was my intention to give you long-term notice that I was terribly disappointed in the way I was treated and was not planning on returning for the second year of my contract." *Id.* As a matter of law, these statements clearly and unequivocally indicated DiFolco's intention to resign before her contract expired. *See Argonaut P'ship L.P. v. Sidek*, No. 96 Civ. 1967, 1996 WL 617335, at *5-6 (S.D.N.Y. Oct. 25, 1996) (applying New York law and interpreting party's statement, quoted in newspaper, as a matter of law); *York Agents, Inc. v. Bethlehem Steel Corp.*, 36 A.D.2d 62, 63-64 (N.Y. App. Div. 1971) (interpreting letter written by party as a matter of law).

By stating that she intended to leave MSNBC before she could fulfill her contractual obligations, DiFolco repudiated her employment contract. *Rochdale Vill., Inc. v. Public Serv. Employees Union*, 605 F.2d 1290, 1297 (2d Cir. 1979) (applying New York law and holding that a party who terminates a contract when she has no right to do so repudiates the contract); *Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 301 A.D.2d 70, 77 (N.Y. App. Div. 2002) (holding that a party's statement that it will commit a breach of its contractual obligations is a repudiation).[4]

DiFolco's repudiation of her contract discharged MSNBC from any further performance under the contract. *See, e.g., American List Corp. v. U.S. News and World Report, Inc.*, 549 N.E.2d 1161, 1165 (N.Y. 1989). Thus, although MSNBC could have

---

[4] Further, DiFolco repudiated her contract in late August 2005, when she communicated her plans to leave. The fact that DiFolco did not intend to resign on the date she wrote her first email is legally irrelevant. The doctrine of repudiation exists precisely so that when a party to a contract communicates a clear intent not to perform all of its contractual obligations, the injured party does not have to wait for the actual breach to occur before taking action. *Computer Possibilities Unlimited*, 301 A.D.2d at 77-78.

elected to permit DiFolco to continue working until a date set by her, it had no legal obligation to do so.

A recent New York case is particularly instructive on this point. In *Computer Possibilities Unlimited*, the plaintiff, CPU, had entered into a contract with Mobil Oil promising that it would provide a computer software package to Mobil Oil's dealers at a particular price. 301 A.D.2d at 72. The contract had a three-year term. *Id.* Less than one year into the contract, CPU secretly signed a separate agreement with a third party. *Id.* at 73. Under this separate agreement, CPU gave the third party the right to set the price of computer software sold to Mobil Oil. *Id.* Without knowledge of this separate agreement, Mobil Oil terminated its contract with CPU some time later but before the contract's expiration date. *Id.* at 75. CPU then sued Mobil Oil for breach of contract. *Id.* at 76.

The court found that by signing a separate agreement granting a third party the right to control the price of computer software sold to Mobil Oil, CPU repudiated its future obligations under its contract with Mobil Oil. *Id.* at 78. Further, the court stated that CPU's repudiation occurred on the date that the agreement was signed, even though CPU had not yet charged any of Mobil Oil's dealers a higher price for the software. *Id.* at 78-79. The court then cited the long-established principle that "a repudiation discharges the non-repudiating party's obligations to render performance in the future." *Id.* at 77 (internal citations omitted). It therefore held, as a matter of law, that "nothing Mobil Oil did after [CPU's] execution of the [separate agreement]," including Mobil Oil's early termination of the contract with CPU, "is actionable as a breach of contract." *Id.* at 79.

8

Here, DiFolco repudiated her future obligations under her contract with MSNBC by stating that she planned to resign at least one year before her contract was set to expire. DiFolco's repudiation relieved MSNBC of any obligation to perform further under the contract. *Id; see also, e.g., Ergonomic Sys. Philippines, Inc. v. CCS Int'l Ltd.*, 777 N.Y.S.2d 446, 447 (N.Y. App. Div. 2004) (holding that party was under no obligation to make additional payments after repudiation by other party). Thus, nothing MSNBC did after DiFolco's late August emails regarding her planned resignation is actionable as a breach of contract, including MSNBC's decision that DiFolco should leave its employ within several weeks, rather than several months.

In short, DiFolco has no cause of action for breach of contract because she repudiated her contract. *See Stadtmauer v. Brel Assocs. IV, L.P.*, 270 A.D.2d 59, 60 (N.Y. App. Div. 2000) (stating that, as "a matter of equity, a party who has indicated that she will not abide by the terms of the contract will not be heard to demand its specific performance").

### B.  DiFolco's Resignation Prevents Her from Obtaining Any Damages as a Result of the Termination of Her Employment with MSNBC

Even if DiFolco had not repudiated her contract, she still could not recover against MSNBC based on the termination of her position.

Under New York law, an employee who voluntarily resigns cannot "seek damages by reason of the termination of [her employment]." *Laiken v. Am. Bank & Trust Co.*, 34 A.D.2d 514, 514 (N.Y. App. Div. 1970). DiFolco's resignation foreclosed her "from seeking the protections of her previous rights as an employee." *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (applying New York law) (citation

omitted); *see also Girard v. Bd. of Educ.*, 168 A.D.2d 183, 184-85 (N.Y. App. Div. 1991).

The fact that DiFolco did not make her resignation effective immediately does not change the legal analysis. *Molinar v. W. Elec. Co.*, 525 F.2d 521, 529-31 (1st Cir. 1975) (applying New York law and affirming grant of directed verdict in defendants' favor on breach of employment contract claim where plaintiff submitted resignation letter, making his resignation effective five days later). Once DiFolco communicated her intent to resign, MSNBC had no obligation to continue the employment relationship. Instead, it was MSNBC's right as an employer to decide when the resignation would be least disruptive to its business. MSNBC's decision to "accept[] [DiFolco's] resignation immediately [did] not convert her resignation into a discharge." *In re Eames*, 10 A.D.3d 830, 830 (N.Y. App. Div. 2004).

DiFolco resigned from her position at MSNBC, and thus cannot recover against MSNBC for breach of her employment contract. The Court should dismiss Count I of the Complaint as a matter of law.

### C.  DiFolco's Claim for Breach of the Covenant of Good Faith and Fair Dealing Should Be Dismissed as Redundant of Her Breach of Contract Claim

In Count II of the Complaint, DiFolco alleges breach of the implied covenant of good faith and fair dealing. DiFolco alleges the same facts in support of this claim as she alleges in support of her breach of contract claim. *Compare* Complaint Count I *with* Count II. New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d

10

73, 81 (2d Cir. 2002) (applying New York law and affirming dismissal of breach of implied covenant and good faith and fair dealing claim); *see also ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) (same). Thus, the Court should dismiss DiFolco's claim for breach of the implied covenant of good faith and fair dealing as redundant.

### III. The Court Should Dismiss DiFolco's Claim for Tortious Interference with Contractual and/or Prospective Business Relations (Count III) Because DiFolco Has Alleged No Contract or Other Business Relations with Which MSNBC Could Have Interfered

In Count III, DiFolco claims that MSNBC tortiously interfered with her contractual and/or prospective business relations. The Court should dismiss this cause of action as a matter of law because DiFolco has failed to allege the required elements of the claim.

The elements of a tortious interference claim in New York are: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (applying New York law); *Kaminski v. United Parcel Serv.*, 120 A.D.2d 409, 412 (N.Y. App. Div. 1986).

DiFolco has failed to allege *any* of these elements. The Complaint nowhere mentions the existence of a contract between DiFolco and another entertainment/news company, much less allege that MSNBC had knowledge of this contract and intentionally and improperly procured its breach. Similarly, the Complaint makes no mention of any non-contractual prospective business relations between DiFolco and another company with which MSNBC could have interfered.

11

Further, the Complaint does not allege any conduct that could constitute tortious interference. DiFolco does complain that MSNBC caused defamatory comments about her to appear on certain websites. *See, e.g.*, Complaint at ¶ 53. But all of these statements appeared on the internet by September 4, 2005. *Id.* at ¶¶ 51-53. Even if MSNBC had caused these statements to be published, its actions in doing so could not be the basis of a tortious interference claim because DiFolco had no other contract or prospective contract at that time. As DiFolco wrote on August 31, just four days earlier, she was "walking away from a job [at MSNBC] *without another option.*" Exh. B (emphasis added). Thus, the documents referenced in the Complaint establish that no other contract or prospective business relations existed with which MSNBC could have interfered.

In short, the Complaint is simply devoid of any factual allegations that could form the basis of a tortious interference claim, and the Court should dismiss Count III of the Complaint.

### IV. The Court Should Dismiss DiFolco's Defamation Claim (Count IV) Because the Statements Alleged Are Either True or Protected Opinion and Therefore Not Actionable

In Count IV, DiFolco claims that all of the defendants are liable for defamation, based upon statements posted on three websites between late August and early September 2005. Even if DiFolco could establish that MSNBC made these statements, which it denies, none of these statements is actionable as a matter of law. *Immuno AG. v. J. Moor-Jankowski*, 567 N.E.2d 1270, 1282 (N.Y. 1991) (stating that summary disposition as a matter of law is particularly appropriate in libel cases).

12

The first statement discussed in the Complaint reported that DiFolco had resigned from MSNBC "in the middle of her contract." Complaint at ¶ 51. The second similarly stated said that "[l]uscious Claudia DiFolco has quit MSNBC in the middle of her contract, leaving Sharon Tay as the sole host of 'Entertainment Hotlist' and 'At the Movies.'" *Id.* at ¶ 52.

Both of these statements are true. DiFolco's correspondence to Kaplan unequivocally stated her intention to resign no later than at the end of her first contract year. *See supra* at 7. Given that she had signed a two-year contract with MSNBC, and had no right to terminate the contract at the end of the first year, she was resigning "in the middle of her contract."

Truth is a complete defense to a defamation claim. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) (applying New York law and finding, as a matter of law, that allegedly defamatory statement at issue was substantially true); *Hirschfeld v. Daily News L.P.*, 269 A.D.2d 248, 249 (N.Y. App. Div. 2000) (affirming dismissal of defamation claim as a matter of law). Thus, these first two statements are not actionable as a matter of law.

The third and last statement discussed in the Complaint reported the following:

> Claudia DiFolco, is one of the new breed of journalists who believes that cleavage, over time [sic] in the make up chair and a huge desire to become a star (instead of reporting on them,) is how you pay your dues. I have heard that throughout her irrelevant career at MSNBC, she constantly ignored directions from news producers during live shots, refused to do alternate takes for editing purposes, pouted like a spoiled child and never was a team player.

13

Complaint at ¶ 53. This statement was posted in a chat room by an individual with the screen name "Jill Journalist", *id.*, on a website reporting "inside" information about the entertainment industry. *See* www.tvspy.com.[5]

The Court should find that the posting qualifies as a protected opinion. Opinions are privileged and not actionable as defamatory statements under New York law. *Immuno AG.*, 567 N.E.2d at 1277. As New York's highest court has noted, New York is a "cultural center for the Nation," and its law has "long provided a hospitable climate for the free exchange of ideas," often giving broader protection to speech than that provided by federal law. *Id.* at 1277-78.

Whether a statement qualifies as an opinion is a question of law for the court. *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) (applying New York law and affirming grant of motion to dismiss defamation claim). The court decides whether the allegedly defamatory statement is an opinion by reviewing its broader social context, its immediate context, and the statement's actual language to determine how the statement would strike the reasonable reader. *Immuno AG.*, 567 N.E.2d at 1280-81; *see also Brian v. Richardson*, 87 N.Y.2d 46, 51-53 (N.Y. 1995). The New York Court of Appeals has stressed that the analysis must begin by "looking at the content of the whole communication, its tone and apparent purpose," rather than "isolating" particular phrases in the challenged speech. *Immuno AG.*, 567 N.E.2d at 1281. Only by taking into account the "full context of challenged speech" can the courts protect "full and vigorous exposition and expression of opinion on matters of public interest." *Id.* (citations

---

[5] As discussed above, because DiFolco refers explicitly to the statement and website in the Complaint, the Court can consider the website's contents on a motion to dismiss. *See supra* at n. 2.

14

omitted). Applying this standard, New York courts have found, for example, that statements accusing a plaintiff of fabricating the premise of one of his columns and calling a plaintiff a "flagrant opportunist" qualified as opinions. *See Zion v. NYP Holdings, Inc.*, 18 A.D.3d 376, 376 (N.Y. App. Div. 2005); *Costanza v. Seinfeld*, 279 A.D.2d 255, 256 (N.Y. App. Div. 2001).

Here, the broader social context, the immediate context, and the actual language of the statement posted by Jill Journalist all demonstrate that the statement was merely the opinion of its author. First, the broader social context of the statement hinges on the "nature of the particular public forum" in which the statement was made. *Brian*, 87 N.Y.2d at 51. In this case, the challenged statement about DiFolco was made in a website chat room, on a message board called the "TVSpy Watercooler." *See* Exh. C to Declaration of Julie Rikelman. Like the letter to the editor and Op-Ed sections considered in *Immuno AG.* and *Brian* respectively, the website chat room is "a medium that is typically regarded by the public as a vehicle for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter." *Id.* at 52 (internal quotations omitted); *see also SPX Corp. v. Doe*, 253 F. Supp.2d 974, 981 (N.D. Ohio 2003) (stating that reasonable reader would not view statements on internet message boards as facts and granting motion to dismiss defamation claim under Ohio law). Thus, the broader social context of the challenged statement suggests that it is an opinion.

Second, the immediate context of the statement also points to its nature as an opinion. The fact that the website chose to call its message board the "Watercooler," a well-established location in our culture for exchanging gripes, gossip, and pleasantries,

15

shows that the website itself views its message board as a place to share views rather than hard facts. *See Knievel v. ESPN*, 393 F.3d 1068, 1071 (9th Cir. 2005) (considering portion of website and its contents in evaluating allegedly defamatory statement on motion to dismiss and affirming dismissal). Further, the message board refers to the comments appearing on it as opinions. Its disclaimer states: "The opinions expressed on this board reflect the opinions of the participants and not of its sponsor." Exh. C; *see SPX Corp.*, 253 F. Supp.2d at 981 (considering Yahoo's statement that postings on its message boards are opinions in finding that posting was non-actionable opinion).

Third and finally, the actual language of "Jill Journalist's" posting demonstrates that it is an opinion. In the posting, the author uses humor and sarcasm, referring to DiFolco as a reporter who believes that "cleavage [and] overtime time in the make-up chair" is the way to pay one's dues, to communicate her overall negative view of DiFolco. Further, the author's references to DiFolco's "pouting" and refusal to be a "team player" are all subjective takes on DiFolco's conduct. Whether someone is pouting or being reasonable, just as whether someone is a team player or not, is in the eye of the beholder and not susceptible to proof or disproof as objective facts.

And, even if the posting includes isolated phrases that could be viewed as factual, that is not enough to disqualify it from protection as an opinion. New York courts have cautioned against "parsing of a possible fact from its plain context of opinion" and have found statements as whole to constitute opinions, even if they include some arguably factual assertions. *See, e.g., Immuno AG.*, 567 N.E.2d at 1282. Courts of other states that provide equally strong protection to opinions under state law have reached similar conclusions. *See, e.g., Scott v. News-Herald*, 496 N.E.2d 699, 708-09 (Ohio 1986)

(rejecting defamation claim after finding that article on sports page accusing local official of committing perjury was opinion, even though it included some allegations that were factual and verifiable); *SPX*, 253 F. Supp.2d at 980-81 (same). In sum, the "predominant tone" of this posting on the TVSpy Watercooler message board indicated to any reasonable reader that it "was something less than serious, objective reportage," and merely represented the opinion of its author. *Brian*, 87 N.Y.2d at 53.[6]

Thus, there is no legal basis for DiFolco's defamation claims and the Court should dismiss Count IV of her Complaint as a matter of law.

## V. The Court Should Dismiss DiFolco's New York Labor Law Claim (Count V) Because It Depends on DiFolco's Breach of Contract Claim, Which Is Legally Meritless

Count V of DiFolco's Complaint alleges that MSNBC violated the wage payment provisions of the New York Labor Law, §§ 190 *et seq*. DiFolco's claims for unpaid wages under the New York Labor Law, however, depend on her ability to establish a breach of her employment contract by MSNBC. *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 632 (N.Y. App. Div. 1993) (holding that to assert a substantive claim for wages under the New York Labor law, a plaintiff must have an enforceable contractual right to those wages and dismissing plaintiff's breach of contract and labor law claims); *see also Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999) (same).

---

[6] The statement also qualifies as protected opinion under federal law because it contains loose, figurative, and hyperbolic language. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (1990). However, the Court need not evaluate federal law, because the application of New York law is sufficient to resolve the issues posed by this motion to dismiss.

17

As discussed above, DiFolco's breach of contract claim has no legal merit because DiFolco herself broke her contract with MSNBC by stating her intention to resign well before her contract was set to expire. Thus, there is no legal merit to DiFolco's claims under the New York Labor Law. The Court should therefore dismiss Count V of DiFolco's Complaint as a matter of law.

## CONCLUSION

For all of the foregoing reasons, MSNBC respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: June 27, 2006
      New York, New York

*/s/ Julie Rikelman*
Julie Rikelman (JR 4888)
NBC Universal, Inc.
30 Rockefeller Plaza, Rm. 1010E
New York, N.Y. 10112
(212) 664-4167 (phone)
(212) 664-6572 (fax)

Counsel for MSNBC Cable L.L.C.

18