UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
CLAUDIA DIFOLCO,                    :
                                    :
              Plaintiff,            :     06 Civ. 4728 (LAP)
                                    :
         -against-                  :     <u>MEMORANDUM AND ORDER</u>
                                    :
MSNBC CABLE L.L.C., RICK KAPLAN,   :
SCOTT LEON, CASSANDRA BROWNSTEIN,   :
and JOHN DOES I-III,               :
                                    :
              Defendants.           :
                                    :
------------------------------------x


LORETTA A. PRESKA, U.S.D.J.


       Claudia DiFolco,("Plaintiff"), brought the above-

captioned action seeking back wages, specific performance,

damages, including punitive damages, and costs against

Defendants MSNBC Cable L.L.C. ("MSNBC"), Rick Kaplan

("Kaplan"), Scott Leon ("Leon"), and Cassandra Brownstein

("Brownstein").  Plaintiff moves to transfer venue to the

District of New Jersey, and Defendants move to dismiss the

entire suit for failure to state a claim.  Defendants

Kaplan and Brownstein move to have the claims against them

dismissed for lack of personal jurisdiction.  Defendant

Brownstein moves to have the claims against her dismissed

for insufficient service of process.  For the following

reasons, the motion to dismiss all claims against Brownstein is granted, the motion to dismiss claims against MSNBC, Kaplan, and Leon is granted in part and denied in part, and the motion to transfer venue is denied.

## BACKGROUND[1]

Plaintiff was employed as an anchor, correspondent, and reporter with MSNBC.  (Compl. ¶ 4).[2]  Rick Kaplan was President, Scott Leon was an Executive Producer, and Cassandra Brownstein was a Producer at MSNBC, all of whom were authorized to act on behalf of the company.  (Compl. ¶¶ 6-8).  Plaintiff is a television entertainment reporter with thirteen years of experience.  (Compl. ¶¶ 10-13).  On December 2, 2004, MSNBC entered into a two-year contract with Plaintiff (the "Contract.").  (Compl. ¶¶ 16, 17). Plaintiff alleges MSNBC breached the terms of this contract by failing to pay additional compensation for Plaintiff's occasional hosting or special appearances on MSNBC programs.  (Compl. ¶¶ 19, 20).  Plaintiff alleges she was

---

[1] For purposes of the motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the factual allegations made in the Complaint as true and draws all inferences in favor of the non-moving party.  See Karedes v. Ackerly Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005).  Accordingly, the background section is based solely on assertions made in Plaintiff's Complaint.

[2] "Compl." refers to the Complaint dated May 5, 2006.

subject to "repeated mistreatment and abuse that created
intolerable working conditions." (Compl. ¶ 23).
Plaintiff's allegations include: the cancellation of
"shoots and on-air stories" (Compl. ¶ 23), false
communications by Leon to MSNBC executives complaining of
Plaintiff's unavailability to work (Compl. ¶ 28), and
misrepresentations by Brownstein regarding the urgency of
particular work projects (Compl. ¶ 34). Plaintiff alleges
that when she sought Leon's help in addressing Brownstein's
harassment, Leon responded by canceling Plaintiff's shoots.
(Compl. ¶ 35).

On August 23, 2005, Plaintiff sent Kaplan an e-mail
(the "8/23 e-mail") to arrange a meeting to "discuss [her]
exit from the shows." (Compl. ¶¶ 37, 38). On August 24,
2005, Plaintiff was informed that she would no longer be
covering "Fashion Week." (Compl. ¶ 41). Immediately upon
learning this, Plaintiff sent an e-mail to Kaplan, stating
that "[she] did not resign yesterday." (Compl. ¶ 43).
Shortly thereafter, MSNBC sent Plaintiff a proposed
separation and release agreement through her agent,
claiming that she had resigned. (Compl. ¶ 45). Plaintiff
alleges that MSNBC terminated Plaintiff's employment and
failed to pay wages due, in violation of the terms of their

3

contract and the wage payment provisions of New York Labor Law. (Compl. ¶¶ 46, 47).

Plaintiff alleges the Defendants caused defamatory statements to be published on the websites TVSpy, Inside Cable, and NewsBlues. (Compl. ¶¶ 51-53). Plaintiff asserts that this conduct was "a campaign to disparage [her] professional reputation, industry standing, and ability to obtain future employment by falsely claiming . . . [she] had resigned, broken her contract, and/or deserted her co-anchor." (Compl. ¶ 48). Plaintiff claims "[the] defamatory statements could only have originated from MSNBC officials given the confidential nature (up to that point) of her contract dispute with Defendant MSNBC." (Compl. ¶ 49).

Plaintiff asserts that MSNBC has made inconsistent representations to her regarding the status of her contract, including that: she had resigned, the company was terminating her employment, and that she was employed but on an unpaid leave of absence, (Compl. ¶ 60), and that the uncertainty of her status has undermined her ability to pursue new employment, jeopardized her immigration status, forced her to cancel her planned honeymoon, and disrupted her emotional well being, (Compl. ¶ 61).

<u>DISCUSSION</u>

1.   <u>Legal Standard for Dismissal</u>

It is well-settled that "[a] case should not be dismissed unless the court is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief." <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 300 (2d Cir. 2002) (citing <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001)).  For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the factual allegations made in the Complaint as true and draws all inferences in favor of the non-moving party.  <u>See</u> <u>Karedes v. Ackerly Group, Inc.</u>, 423 F.3d 107, 113 (2d Cir. 2005).  The Court, however, need not give "'credence to plaintiff's conclusory allegations'" or legal conclusions offered as pleadings.  <u>Cantor Fitzgerald v. Lutnick</u>, 313 F.3d 704, 709 (2d Cir. 2002) (quoting <u>Dawes v. Walker</u>, 239 F.3d 489, 491 (2d Cir. 2001)); <u>Van Carpals v. S.S. Am. Harvester</u>, 297 F.2d 9, 11 n.1 (2d Cir. 1961) (Friendly, J.) ("[I]n federal pleading there is no need to plead legal conclusions; these are for the court to apply.").  The Court may consider materials of which the plaintiff had notice and relied upon in framing his complaint, as well as materials of which

judicial notice may be taken. See Fed. R. Evid. 201;

Kavowras v. N.Y. Times Co., 328 F.3d 50, 57 (2d Cir. 2003);

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48

(2d Cir. 1991).  In addition, the Court may consider

materials outside the record if certain conditions for

those materials are met including: (1) it is clear on the

record that no dispute exists regarding the authenticity or

accuracy of the document; and (2) it is clear that there

exists no material disputed issues of fact regarding the

relevance of the document. Faulkner v. Beer, 463 F.3d 130,

134 (2d Cir. 2006).

        "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for

lack of personal jurisdiction, plaintiff bears the burden

of showing that the court has jurisdiction over the

defendant.  Prior to discovery, a plaintiff may defeat a

motion to dismiss based on legally sufficient allegations

of jurisdiction." In re Magnetic Audiotape Antitrust

Litigation 333 F.3d 204, 206 (2d Cir. 2003) (internal

citations omitted).  "Where, as here, a court relies on

pleadings and affidavits, rather than conducting a full-

blown evidentiary hearing, the plaintiff need only make a

prima facie showing that the court possesses jurisdiction

over the defendant." DiStefano v. Carozzi North America

Inc., 236 F.3d 81, 84 (2d Cir. 2001) (internal quotations

omitted).   Further, a court must credit Plaintiff's averments of jurisdictional facts as true.  See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).


2. Breach of Contract

Plaintiff claims MSNBC breached its Contract with her through "conduct leading up to and its ultimate wrongful termination of Plaintiff's employment."  (Pl. Compl. ¶ 64). Plaintiff asserts that her 9/23 e-mail to Kaplan seeking to "discuss [her] exit from the shows" was misinterpreted as a resignation.  (Pl. Compl. ¶¶ 37-46).  Defendants insist the 9/23 e-mail was a repudiation, relieving them from further obligation under the Contract.  (MSNBC Mem. at 9).[3]

"A repudiation can be . . . 'a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach.'"  Norcan Power Partners v. Niagra Mohawk Power Corp., 92 N.Y.2d. 458, 463 (N.Y. 1998) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 250 (1981); see also Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp., 301 A.D.2d 70, 77 (N.Y. App. Div. 2002)

_____

[3] "MSNBC Mem." refers to the Memorandum of Law in Support of MSNBC Cable L.L.C.'s Motion to Dismiss Complaint, dated June 27, 2006.

(same).  "In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform."  RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. b. (1981).  "[Repudiation] relieves the non-repudiating party of its obligation of future performance."  American List Corp. v. U.S. News and World Report, Inc., 75 N.Y.2d 38, 44 (N.Y. 1989).  "It is axiomatic that it is the responsibility of the courts to interpret written instruments."  McDermott v. Great American Alliance Inc. Co., No. 02 Civ. 607, 2005 WL 2437020, at *2 (N.D.N.Y. Sept. 30, 2005) (citing Hartford Acc. And Indem. Co. v. Wesolowski, 305 N.E.2d 907, 909 (N.Y. 1973)).

Plaintiff's Contract is unambiguous in its requirement that she be at MSNBC's disposal for a two-year period. (The Contract, Ex. A to Rikelman Decl. at 1, ¶ 4(a)).[4] Plaintiff's 8/23 e-mail is equally unambiguous in expressing Plaintiff's intention to leave before the completion of said period.  In the e-mail, Plaintiff requested a meeting with Kaplan and noted that "after much considerable thought, [the meeting] is to discuss my exit from the shows."  (8/23 e-mail, Ex. B to Rikelman Decl. at

---

[4] "Rikelman Decl." refers to the Declaration of Julie Rikelman in Support of MSNBC Cable L.L.C.'s Motion to Dismiss Complaint, dated June 27, 2006.

1).  She added that she "want[ed] to make sure [she] [did] this in the least disruptive manner possible and g[a]ve [Kaplan] ample time to replace [her]."  (Id.).  In her e-mail to Kaplan of August 31, 2005 (the "8/31 e-mail"), Plaintiff notes that she "was not planning on returning for the second year of [her] contract."  (8/31 e-mail, Ex. B to Rikelman Decl. at 3).  Both of these e-mails from Plaintiff constituted repudiation of the Contract and relieved MSNBC of future obligations.

However, while Plaintiff's repudiation relieves MSNBC of its future obligations under the Contract, it does not relieve MSNBC of its obligation to pay Plaintiff for work performed prior to her repudiation.  See Norcan at 463.  Plaintiff claims she is owed an unspecified amount for filling in as host on "a number of occasions" and certain travel expenses which pre-dated her repudiation.  (Pl. Compl. ¶¶ 19-21).  As this amount is unspecified, and Plaintiff concedes it can, at most, be a small percentage of Plaintiff's income under the Contract, said wages and travel expenses remain owed to Plaintiff but do not constitute a material breach by MSNBC.  Accordingly, MSNBC's motion to dismiss Plaintiff's claim of breach of contract is granted.

3. <u>Breach of Covenant of Good Faith and Fair Dealing</u>

Plaintiff claims MSNBC breached the covenant of good faith and fair dealing implied in the Contract, by "wrongful treatment leading up to and including its unjustified termination of Plaintiff's employment, as well as its other wrongful conduct." (Compl. ¶ 68). Plaintiff's allegations include: the cancellation of "shoots and on-air stories" (Compl. ¶ 23), false communications by Leon to MSNBC executives complaining of Plaintiff's unavailability to work (Compl. ¶ 28), and misrepresentations by Brownstein regarding the urgency of particular work projects (Compl. ¶ 34). Plaintiff alleges that when she sought Leon's help in addressing Brownstein's harassment, Leon responded by canceling Plaintiff's shoots. (Compl. ¶ 35).

Defendants argue this covenant of good faith and fair dealing claim must be dismissed as precluded by the breach of contract claim, citing <u>Harris v. Provident Life and Acc. Ins. Co.</u>, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."). However, "alternative pleading of contradictory claims is explicitly allowed under the Federal Rules of Civil Procedure," <u>Seiden Assocs. Inc. v. ANC Holdings,</u>

<u>Inc.</u>, 754 F. Supp. 37, 40 (S.D.N.Y. 1991), and "[a] party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations," <u>Chase Manhattan N.A. v. Keystone Distribs., Inc.</u>, 873 F. Supp. 808, 815 (S.D.N.Y. 1994).

Plaintiff's Complaint fails to state a claim of breach of contract, but taking Plaintiff's allegations as true, she does allege breach of the covenant of good faith and fair dealing.  In that the breach of contract claim is dismissed, the question of preclusion by that claim is now moot.  Accordingly, MSNBC's motion to dismiss the claim of breach of the covenant of good faith and fair dealing is denied.

4. <u>Unpaid Wages Under New York's Labor Law</u>

As stated above, Plaintiff's repudiation of the Contract does not relieve MSNBC from its obligations incurred under the Contract <u>prior</u> to her repudiation.  <u>See</u> discussion <u>supra</u>, Part 2.  Plaintiff alleges MSNBC owes her unpaid wages and travel expenses.  (Compl. ¶¶ 19-21). MSNBC has not countered this allegation, which must be accepted as true for purposes of a motion to dismiss. Accordingly, MSNBC's motion to dismiss Plaintiff's claims under New York Labor Law is denied.

5. <u>Defamation</u>

The New York Court of Appeals has stated that defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society."  <u>Foster v. Churchill</u>, 665 N.E.2d 153, 157 (N.Y. 1996); <u>see also</u> <u>Dillon v. City of New York</u>, 261 A.D.2d 34, 38 (N.Y. App. Div. 1st Dep't 1999) (stating that the elements of a defamation claim are "a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se") (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)).

However, it is well-established that "[t]ruth provides a complete defense to defamation claims."  <u>Dillon</u>, 261 A.D.2d at 39 (citing, <u>inter alia</u>, <u>Rinaldi v Holt, Rinehart & Winston, Inc.</u>, 366 N.E.2d 1299, 1306 (N.Y. 1977)); <u>see also</u> <u>Commonwealth Motor Parts Ltd. v. Bank of Nova Scotia</u>, 44 A.D.2d 375, 378 (N.Y. App. Div. 1st Dep't 1974) (stating that it is "fundamental that truth is an absolute, unqualified defense to a civil defamation action.").

A.   Allegedly Defamatory Statements Regarding
     Plaintiff's Resignation

Plaintiff claims that "one or more" of the Defendants
published defamatory statements on three television
industry-related websites.  (Compl. ¶ 50). The alleged
defamatory content of the first two statements concerns
Plaintiff's resignation "in the middle of her contract."
(Compl. ¶¶ 51, 52).  Plaintiff asserts that "[the]
defamatory statements could only have originated from MSNBC
officials given the confidential nature (up to that point)
of her contract dispute."  (Compl. ¶ 49).  These statements
are true (see discussion supra Part 2), and thus not
actionable.

B.   Allegedly Defamatory Statement Regarding
     Plaintiff's Character

The third allegedly defamatory statement was published
under the alias "Jill Journalist" on a message board called
the "Watercooler" (see MSNBC Mem. at 15) on the website
TVSpy.  (Compl. ¶¶ 51-53).  The statement reads as follows:

> Claudia DiFolco, is one of the new breed of
> journalists who believes that cleavage, over time
> in the makeup chair and a huge desire to become a
> star (instead of reporting on them,) is how you
> pay your dues.  I have heard that throughout her
> irrelevant career at MSNBC, she constantly
> ignored directions from news producers during
> live shots, refused to do alternative takes for
> editing purposes, pouted like a spoiled child and
> never was a team player.  Even the consummate
> professionalism of Leon and Sharon Tay couldn't

> rub off on DiFolco.  She was difficult in
> Phoenix, difficult in Secaucus, and reporters
> don't change their spots!

(Compl. ¶ 53).

"Where a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation." Armstrong v. Simon & Schuster, Inc., 649 N.E.2d 825, 829 (N.Y. 1995).  The key question here is whether, drawing all reasonable inferences in favor of Plaintiff, the above statement contains assertions of fact or opinion.

It is standard in New York defamation actions "to read published articles in context to test their effect on the average reader, not to isolate particular phrases but to consider the publication as a whole."  Immuno AG v. Moor-Jankowski, 567 N.E.2d 1270 (N.Y.), cert. denied, 500 U.S. 954 (1991).  In Brian v. Richardson, 660 N.E.2d 1126, 1129 (N.Y. 1995), the New York Court of Appeals noted that the law "governing defamation actions involving communications purporting to convey opinion has been explored in a quartet of recent Court of Appeals decisions."[5]  Id. (citing Gross

---

[5] From those decisions, the New York Court of Appeals distilled the following three factors which courts are instructed to consider in determining whether a statement
(continued)

v. New York Times Co., 623 N.E.2d 1163 (N.Y. 1993), 600 W.
115th St. Corp. v. Von Gutfield, 603 N.E.2d 930 (N.Y.
1992), Immuno AG v. Moor-Jankowski, 567 N.E.2d 1270 (N.Y.),
cert. denied, 500 U.S. 954 (1991), and Steinhilber v.
Alphonse, 501 N.E.2d 550 (N.Y. 1986)).

Based on those decisions, the New York Court of
Appeals reiterated in Brian the importance, in
distinguishing between actionable factual assertions and
nonactionable opinion, of "consider[ing] the content of the
communications as whole, as well as its tone and apparent
purposes.  Id. at 1129-30 (citation omitted).  "Rather than
sifting through a communication for the purpose of
isolating and identifying assertions of fact, the court
should look to the over-all context in which the assertions

_____

(continued)
is one of fact or opinion:

> (1) whether the specific language in issue
> has a precise meaning which is readily
> understood; (2) whether the statements are
> capable of being proven true or false; and
> (3) whether either the full context of the
> communication in which the statement appears
> or the broader social context and
> surrounding circumstances are such as to
> signal [to] readers or listeners that what
> is being read or heard is likely to be
> opinion, not fact.

Brian, 660 N.E.2d at 1129 (citations and internal quotations
omitted).  The third factor "lends both depth and difficulty
to the analysis" and is critical to determining whether the
third statement consists of "assertions of facts [or]
nonactionable expressions of opinion."  Id.

were made and determine on that basis 'whether the
reasonable reader would have believed that the challenged
statements were conveying facts about the libel
plaintiff.'"   Id. at 1130 (quoting Immuno, 567 N.E.2d at
1281).  Beyond the "immediate context in which the disputed
words appear," the New York Court of Appeals requires
courts "to take into consideration the larger context in
which the statements were published, including the nature
of the particular forum."  Brian, 660 N.E.2d at 1130.

In Brian, the New York Court of Appeals affirmed the
dismissal of a defamation action involving an article that
was published on the Op Ed page of the New York Times.  Id.
at 1127, 1131.  The New York Court of Appeals noted that
"the Op Ed page is a forum traditionally reserved for the
airing of ideas on matters of public concern," the author
disclosed his representation of a party in the article, the
tone of the article "was rife with rumor [and]
speculation," and "the purpose of [the] article was to
advocate an independent governmental investigation" of some
alleged misconduct.  Id. at 1130-31.  "Given this
contextual background," the New York Court of Appeals
concluded that "a reasonable reader would understand the
statements defendant made about plaintiff as mere

allegations to be investigated rather than as facts."  Id.
at 1131 (emphasis in original).

Similarly, in Immuno, the New York Court of Appeals
affirmed the dismissal of a defamation action where "the
challenged communication was a letter to the editor of a
professional journal – a medium that is typically regarded
by the public as a vehicle for the expression of individual
opinion rather than the rigorous and comprehensive
presentation of factual matter."  Brian, 660 N.E.2d at 1130
(internal quotations omitted and citing Immuno, 567 N.E.2d
at 1280).  And in Steinhilber, the New York Court of
Appeals also affirmed the dismissal of a defamation action
where "the disputed statements . . . were made by [a] union
official as part of a recorded telephone message that was
calculated to punish a scab" where the "audience may
anticipate [the use] of epithets, fiery rhetoric or
hyperbole."  Brian, 660 N.E.2d at 1130 (internal quotations
omitted and citing Steinhilber, 501 N.E.2d at 555-56).
Finally, in Gross, the New York Court of Appeals held that
the statements were actionable where "the accusations had
been made in the course of a lengthy, copiously documented
newspaper series," and "the articles appeared in the news
section of the newspaper where, unlike the editorial
section, the reader expects to find factual accounts."

Brian, 660 N.E.2d at 1130 (internal quotations omitted and
citing Gross, 623 N.E.2d at 1169).

Although not binding, SPX Corp. v. Doe, 253 F. Supp.
2d 974 (N.D. Ohio 2003) is persuasive because of its
factual similarity to this case.  In SPX, a publicly traded
corporation brought a defamation action against an
individual who had allegedly posted false statements on an
internet message board maintained by Yahoo! Inc.  Id. at
976.  The challenged statements warned investors of
forthcoming investigations of the corporation by the FBI
and the SEC and advised investors to sell the corporation's
stock.  Id. at 976-77.  In granting the defendant's motion
to dismiss, the SPX Court concluded that the challenged
statements were protected opinion because "[a] reasonable
reader would not view [them] . . . as facts when placed on
such an open and uncontrolled forum."  Id. at 981.

In this case, the third challenged statement was
posted on the "Watercooler" message board of the TVSpy
website.  As with the Op Ed page at issue in Brian, the
letter to the editor in Immuno, and the Internet message
board in SPX, the "common expectation" of readers is that
statements published in such media will "contain
considerable hyperbole, speculation . . . and opinion."
Brian, 660 N.E.2d at 1130.  See also Versaci v. Richie, 30

18

A.D.3d 648, 649 (N.Y. App. Div. 3d Dep't 2006) (affirming
dismissal of defamation claim because, <u>inter alia</u>, the
statement at issue was posted "on an Internet public
message board which . . . is a forum where people air
concerns about any matter").  Moreover, the publication of
the statement on the "Watercooler" message board is a
reference to a location where people, usually work
colleagues, go to engage in non-serious banter.  <u>See Hammer
v. Amazon.com</u>, 392 F. Supp. 2d 423, 431 (E.D.N.Y. 2005)
(dismissing defamation claim challenging statements
contained in a book review on Amazon.com's website because,
<u>inter alia</u>, the statements "appear in the context of a book
review under the heading 'Reviews'" and, thus, "the average
person understands that such reviews are the reviewer's
interpretation").  "Thus, the 'broader context' in which
[the third challenged statement] was published provide[s]
some signals to the reader that its contents were
expressions of opinion."  <u>Brian</u>, 660 N.E.2d at 1130.

In addition, the third challenged statement's
immediate context also supports the conclusion that it is
nonactionable opinion.  The anonymity of the statement's
author, "Jill Journalist," provides the reader with no
information to support the veracity of his or her
statements.  <u>See Brian</u>, 660 N.E.2d at 1130 (stating "the

identity, role and reputation of the author may be factors
to the extent that they provide the reader with clues as to
the article's import"); see also SPX, 253 F. Supp. 2d at
981 (stating that the author's screen name 'neutronb'
diminished his credibility").  Similarly, a reasonable
reader would conclude from the tone and language used in
the challenged statement that it does not purport to be
serious factual reporting.  See Versaci, 30 A.D.3d at 649
(affirming dismissal of defamation claim where, inter alia,
the statement at issue "was [part of] a rambling
commentary"); see also SPX, 253 F. Supp. 2d at 981 (noting
the use of "figurative hyperbole" in the challenged
statements and finding "the tenor of the [Internet message
board] postings . . . not consistent with professional
investment advice").  The challenged statement here
contains gossipy comments regarding Plaintiff's "cleavage"
and makeup, calls her career "irrelevant," and states that
she "pouted like a spoiled child."  (Pl. Mem. at 25).

     In sum, a reasonable reader would conclude from both
the broader context and the immediate context that the
third allegedly defamatory statement consists of opinions,
not facts.  Given this conclusion, the Court need not
address whether the language used in the statement at issue
has a precise meaning which is readily understood or

whether the assertions contained in the statement are capable of being verified.

Accordingly, Defendants' motion to dismiss the claim of defamation is granted.

6. Tortious Interference with Prospective Business Relations

"To state a claim for tortious interference with business relations under New York Law, four conditions must be met: (i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose, or used dishonest, unfair or improper means; and (iv) the defendants' acts injured the relationship." Scutti Enter. LLC. v. Park Place Entm't Corp., 322 F.3d 211, 215 (2d Cir. 2003) (applying New York law). The business relations need not be a formal contract, but may be a "continuing business or other customary relationship." Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998). "Along with demonstrating wrongful means, a plaintiff must also establish that the wrongful acts were the proximate cause of the rejection of the plaintiff's proposed contractual relations." Jabbour v. Albany Med. Ctr., 237 A.D.2d 737, 790 (N.Y. App. Div. 3d Dep't 1997).

Plaintiff claims to have "business relationships in the industry." (Compl. ¶ 73). Plaintiff claims that, prior to her employment with Defendants, she worked for thirteen years at several television networks and stations. (Compl. ¶¶ 10-12). Although Plaintiff does not specify a particular relationship with which the Defendants interfered, Plaintiff asserts that she is an established professional in her field and maintains a range of business relationships. (Compl. ¶¶ 10-12). Plaintiff claims that Defendants knew Plaintiff would have to rely on her professional relationships to find new employment following her departure from MSNBC. (Compl. ¶ 71). Plaintiff alleges that certain conduct of the Defendants, including the aforementioned defamation, was intended to harm Plaintiff's business relationships, and that it resulted in damage. (Compl. ¶¶ 72-75).

In oral argument on March 15, 2007, counsel stated that Plaintiff relied solely on defamation as the wrongful act predicating the claim of tortious interference. In that the defamation claim has been dismissed in its entirety, Defendants' motion to dismiss the claim of tortious interference with prospective business relations is granted.

7. <u>Insufficient Service of Process to Defendant Brownstein</u>

Defendant Brownstein asserts that she was never properly served process.  Plaintiff conceded this point before the Court at oral argument on March 15, 2007.  Accordingly, the motion to dismiss all claims against Defendant Brownstein is granted.


8. <u>Personal Jurisdiction Over Defendant Kaplan</u>

Under New York's long-arm statute, the Court may exercise jurisdiction over Defendant Kaplan if it finds that he "transacts any business within the state or contracts anywhere to supply goods or services in the state" if the cause of action arises from that transaction.  N.Y. C.P.L.R. § 302(a)(1).  A defendant transacts business in New York if he "purposely avails [himself] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000).  Whether a defendant engaged in purposeful activity within New York depends on the totality of the circumstances.  <u>See</u> <u>Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors</u>, 510 F.2d 870, 873 (2d Cir. 1975); <u>Knight-McConnell v. Cummins</u>, No. 03 Civ. 5035, 2005

WL 1398590 at *2 (S.D.N.Y. June 13, 2005).  Employees who
act in official capacities are not shielded from
jurisdiction in their individual capacity.  See Calder v.
Jones, 465 U.S. 783, 790 (1984).  "Foreeseability that is
critical to due process analysis . . . [requires] that the
defendant's conduct and connection with the forum State are
such that he should reasonably anticipate being haled into
court there."  World-Wide Volkswagon v. Woodson, 444 U.S.
286, 297 (1980).

Plaintiff asserts that Kaplan, as President of MSNBC,
"transacted business on behalf of and exercised control
over aspects of the Company while physically present in New
York." (Pl. Decl. ¶ 5).[6]  Plaintiff alleges that Kaplan
caused damage to her "reputation and prospective business
relations" and caused her "economic injury" in New York.
(Id. ¶ 10).  Plaintiff asserts Kaplan "received
substantial economic benefit as a result of Defendant
MSNBC's business dealings in New York."  (Id. ¶ 21).
Further, the Contract which Kaplan signed on behalf of
MSNBC required Plaintiff to work in New York and designates
New York law as the governing law in the event of a
dispute.  (The Contract, Ex. A to Rikelman Decl. at 3,

---

[6] "Pl. Decl." refers to the Declaration of Claudia Difolco
dated Jan. 12, 2007.

¶ 9).  There is little doubt that Kaplan has sufficient contact with New York that he should "reasonably anticipate being haled into court" here.  See Boehner v. Heise, 410 F. Supp. 2d 228 (S.D.N.Y. 2006) (finding personal jurisdiction in New York over members of the Wisconsin Ginseng Board who issued a defamatory letter for the purpose of interfering with business relations and in breach of contract). Accordingly, the motion to dismiss for lack of personal jurisdiction over Defendant Kaplan is denied.

9. Plaintiff's Motion to Transfer Venue

Plaintiff asks that, should the Court not find personal jurisdiction over all the individual Defendants, the Court transfer venue to the District of New Jersey.  In that the Court has found personal jurisdiction over Kaplan, Leon, and MSNBC, and has dismissed all claims against Brownstein on other grounds, this motion is moot. Accordingly, Plaintiff's motion to transfer venue is denied as moot.

<u>CONCLUSION</u>

For the reasons set forth above, Defendants' motions to dismiss [dkt. nos. 6, 8, and 27] are granted in part and denied in part, and Plaintiff's motion to transfer [dkt. no. 33] is denied.

SO ORDERED:

DATED:      March 29, 2007
            New York, New York


_____
LORETTA A. PRESKA, U.S.D.C.