UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CLAUDIA DIFOLCO,                                          :

Plaintiff,                                               :

   v.                                              :      06 CV 4728 (LAP)

MSNBC CABLE L.L.C., RICK KAPLAN, and                     :
SCOTT LEON,
                                                         :
Defendants.                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Julie Rikelman (JR 4888)
NBCUniversal Media, LLC
30 Rockefeller Plaza, Rm. 1011E
New York, N.Y. 10112
(212) 664-4167 (phone)
(212) 664-6572 (fax)

Counsel for Defendants

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Statement Of Undisputed Facts .............................................................................. 2

    I.     Plaintiff's Decision To Leave MSNBC ....................................................... 2

    II.    The Internet Postings ................................................................................ 7

    III.   Procedural History And The Second Circuit's Opinion In This Case ................... 8

Argument ............................................................................................................... 9

    I.     Summary Judgment Standard ..................................................................... 9

    II.    The Court Should Grant Summary Judgment To MSNBC On
           Plaintiff's Breach Of Contract Claim Because Plaintiff Repudiated
           The Contract .......................................................................................... 10

           A.    It Is Undisputed That Plaintiff Wrote The Emails To Make
                  Mr. Kaplan Believe She Was Leaving MSNBC .................................... 10

           B.    Plaintiff's Allegations About Her Subjective Intentions Are
                  Not Legally Relevant And Cannot Create A Dispute Of
                  Material Fact ....................................................................................... 13

    III.   Should The Court Find A Disputed Issue Of Material Fact
           Concerning Plaintiff's Repudiation, It Should Grant Partial
           Summary Judgment To MSNBC Limiting Damages To The
           Remainder Of The First Year Of The Contract ......................................... 14

    IV.   The Court Should Grant Summary Judgment To Defendants On
           The Defamation Claim Because Plaintiff Has No Competent
           Evidence To Support Her Claim ................................................................ 16

           A.    Plaintiff Has No Competent Evidence Linking Defendants
                  To The Postings ................................................................................... 17

           B.    The First Two Statements Are Not Actionable ......................................... 19

Conclusion ........................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Am. List Corp. v. U.S. News & World Report, Inc.*, 549 N.E.2d 1161 (N.Y. 1989)...................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 9

*Bartel v. NBC Universal, Inc.*, 543 F.3d 901 (7th Cir. 2008) ........................................ 15

*Computer Possibilities Unltd., Inc. v. Mobil Oil Corp.*, 747 N.Y.S.2d 468
   (N.Y. App. Div. 2002) ........................................................................ 12

*Culverhouse v. Cooke Ctr. for Learning & Dev., Inc.*, 675 N.Y.S.2d 776
   (N.Y. Sup. Ct. 1998) ......................................................................... 20

*DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104 (2d Cir. 2010)........................................ 8, 9, 10

*DiFolco v. MSNBC*, No. 06 Civ. 4728(LAP), 2007 WL 959085
   (S.D.N.Y. Mar. 30, 2007) ................................................................ 2, 8, 10

*Dillon v. City of N.Y.*, 704 N.Y.S.2d 1 (N.Y. App. Div. 1999).................................... 19

*In re Eames*, 782 N.Y.S.2d 154 (N.Y. App. Div. 2004) ........................................... 12

*Garcia v. Puccio*, 62 A.D.3d 598 (1st Dep't 2009) ............................................... 19

*Golub v. Enquirer/Star Group, Inc.*, 681 N.E.2d 1282 (N.Y. 1997) ............................. 20

*Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298 (2d Cir. 1986).............................. 19

*Immuno AG. v. J. Moor-Jankowski*, 567 N.E.2d 1270 (N.Y. 1991)............................. 19

*Jeffreys v. The City of New York*, 426 F.3d 549 (2d Cir. 2005)................................... 14

*Liberman v. Gelstein*, 605 N.E.2d 344 (N.Y. 1992) .............................................. 20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............... 9

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171
   (2d Cir. 2002).......................................................................... 8, 16, 19

*Oparaji v. Atl. Container Line*, No. 07 Civ. 2124 (GEL),
   2008 WL 4054412 (S.D.N.Y. Aug. 28, 2008)......................................... 14, 16

*Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279 (S.D.N.Y. 2006) ................. 20

*Record Club of Am., Inc. v. United Artists Records, Inc.*, 643 F. Supp. 925
  (S.D.N.Y. 1986), *vacated on other grounds*, 890 F.2d 1264 (2d Cir. 1989) ..................... 11, 12

*Riisna v. ABC*, 219 F. Supp.2d 568 (S.D.N.Y. 2002) ............................................................. 17, 18

*Rochdale Vill., Inc. v. Pub. Serv. Employees Union*, 605 F.2d 1290 (2d Cir. 1979) ................... 12

*Schulman v. Cont'l Ins.*, 258 A.D.2d 639 (2d Dep't 1999) ........................................................ 19

*Tierney v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700 (N.Y. App. Div. 1993) ....................... 12

**Rule**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 9

**Treatise**

Restatement (Second) of Contracts § 250, cmt. b....................................................................... 11

## INTRODUCTION

The Court should grant summary judgment to Defendants on Plaintiff Claudia DiFolco's claims of breach of contract and defamation because the undisputed evidence refutes her claims. The Second Circuit gave Plaintiff the chance to prove that when she wrote three emails to MSNBC in August 2005 stating that she wanted to leave, she did not repudiate her contract but merely asked to be reassigned from the entertainment shows on which she worked.

But discovery has completely disproved this theory of the case. *All* of Plaintiff's contemporaneous statements in the Summer of 2005 document that she was unhappy at MSNBC and wanted to leave in the middle of her contract, and that this was exactly what she intended to communicate in her emails. Plaintiff said that she wanted to leave at least a dozen times, and there are many documents reflecting her statements, including correspondence with her talent agent and the agent's records of their phone calls.

Further, Plaintiff made key admissions in her deposition: she conceded that she chose her words and wrote the emails so that MSNBC's President, Rick Kaplan, would believe that she was leaving. Thus, not only did Mr. Kaplan interpret the emails in an objectively reasonable way, but he also interpreted the emails in exactly the way Plaintiff intended. To the extent Plaintiff's emails could be subject to different interpretations standing alone, as the Second Circuit held, the other evidence obtained in discovery, including Plaintiff's admissions, has eliminated any reasonable disagreement about the objective meaning of these emails. Plaintiff's assertions about her *subjective* feelings are simply not relevant to a repudiation analysis.

Finally, Plaintiff has no evidence linking Defendants to the allegedly defamatory postings listed in the Complaint. Plaintiff relies on conjecture to support her defamation claim, which is insufficient to avoid summary judgment. Thus, the Court should dismiss the Complaint.

## STATEMENT OF UNDISPUTED FACTS

**I.      Plaintiff's Decision To Leave MSNBC**

MSNBC hired Plaintiff to be the Los Angeles-based correspondent for two shows,

"MSNBC at the Movies" and "MSNBC Entertainment Hot List."  Compl. ¶¶ 15, 18; Ex. 1 at 80.[1]

Plaintiff entered into a two-year employment contract ("the Contract") with MSNBC, covering

the time period from January 17, 2005 to January 16, 2007.  Ex. 2; Compl. ¶¶ 16-17.

The Contract gave MSNBC the unilateral right to end it after one year, on sixty days'

notice.  Ex. 2 at ¶ 4(a).  By contrast, Plaintiff was obligated to work for MSNBC for the entire

two-year period and did not have the right to leave after one year.  *See DiFolco v. MSNBC*, No.

06 Civ. 4728(LAP), 2007 WL 959085, at * 3 (S.D.N.Y. Mar. 30, 2007); Ex. 1 at 93-96.

In the summer of 2005, Plaintiff was not happy with her work at MSNBC.  Ex. 1 at

119:25-120:3.  She testified that her work environment was "toxic" and that her Los Angeles

producer, Cassandra Brownstein, and her direct supervisor, Scott Leon, were unprofessional.  *Id.*

at 120-21.  In approximately July 2005, six months after she started, Plaintiff began considering

leaving MSNBC because of her "working conditions."  *Id.* at 144-145; *see also id.* at 153:8-11.

On Monday, August 22, Plaintiff returned from a week's vacation in Europe.  Ex. 1 at

163:23-164:5.  On her return, Plaintiff received a voice mail message from Ms. Brownstein that

she found condescending and that she thought accused her of having missed work that day.  *Id.*

at 164.  Plaintiff also received an email message from Ms. Brownstein.  Ex. 3 at 505-07.

Plaintiff described Ms. Brownstein's August 22 email as "manipulative."  *Id.* at 505.

The next morning, Tuesday, August 23, Plaintiff sent an email to Defendant Rick Kaplan,

then President of MSNBC.  Ex. 4.  In the August 23 email, Plaintiff wrote that she wanted "to

---

[1]      All exhibits are attached to the Declaration of Julie Rikelman ("Rikelman Dec.").

discuss my exit from the shows" and "make sure i do this in the least disruptive manner possible and give you ample time to replace me." *Id.*

In sending the August 23 email, Plaintiff wanted Mr. Kaplan to "believe that there could have been [the] possibility" that she was planning to leave by the end of her first contract year. Ex. 1 at 169:7-170:3; *see also id.* at 173:24-174:5.

After she sent the email to Mr. Kaplan, Plaintiff spoke on the telephone several times that day with her talent agent, Ken Lindner.  *See* Lindner Dec. ¶ 4; Ex. 5.  It was Mr. Lindner's business practice at the time for his assistant to take detailed notes of all of his telephone conversations with his clients, in order to reflect the conversation.  Lindner Dec. ¶ 3.

In the phone calls with her agent, Plaintiff said that she had decided that she was leaving MSNBC.  Lindner Dec. ¶ 4; Ex. 5.  The logs for two calls in the afternoon of August 23 reflect the following statements by Plaintiff: "she decided she's leaving MSNBC" and "she expressed to rick kaplan that she's leaving."  *Id.*

Early the next morning, Wednesday, August 24, Plaintiff forwarded to Mr. Lindner her August 23 email to Mr. Kaplan.  Ex. 6.  The subject line of the forwarded email was "my letter to rick."  *See* Ex. 1 at 273-274; Ex. 6.  The cover note on the forwarded email stated:

> ken, i should have let you know about this letter earlier, but i just couldn't take it anymore. i tried so hard to fix this . . . . from my perspective, and others' who have worked with scott, past and present, the environment is toxic and the situation hopeless.  please call me to discuss . . .

*Id.* (ellipses in original).

Shortly thereafter, Plaintiff sent another email to Mr. Kaplan, after her assignment for that day was cancelled.  Ex. 7; Compl. ¶¶ 41-42.  In this follow-up email on August 24, Plaintiff wrote to Mr. Kaplan:

> please see scott's e-mail below.  if this is in response to my e-mail to you and it is

> at your direction that i am being being [sic] taken off shoots . . . *fine, I understand*. . . . to be clear, i did not resign *yesterday* and was merely *giving you significant notice* of my intention *so you could begin thinking about alternatives for next year.*

Ex. 7 (emphasis added).

In sending this August 24 email to Mr. Kaplan, Plaintiff wanted him to believe that she was giving notice. Ex. 1 at 179:13-180:5.

Mr. Lindner called Mr. Kaplan early on August 24. Ex. 8 at 419. He was told that Mr. Kaplan was away for the rest of the week and would return on Monday. *Id.*; *see also id.* at 408.

Mr. Lindner was nevertheless able to speak to Mr. Kaplan later on August 24. *Id.* at 419. During their call, Mr. Kaplan said that Plaintiff had "quit" in her August 23 email. *Id.* Just minutes after getting off the phone with Mr. Kaplan, Mr. Lindner spoke again to Plaintiff. This is how Mr. Lindner described his conversation with Mr. Kaplan to Plaintiff: "spoke to rick not great . . . [Rick said] thing is over c quit . . . he said he fet sh'e quit [sic], resigned and that he feels she wants to leave . . . ." *Id.* at 420.

On Sunday, August 28, after he returned from being away and *after* he had told Mr. Lindner on August 24 that Plaintiff had quit, Mr. Kaplan responded directly to Plaintiff's August 23 and 24 emails to him. In his response he wrote: "My complete impression is that you have resigned . . . and offered the courtesy of working out an exact out-date . . . I made Scott aware of t6his [sic] . . . and we feel that sooner is better since your obvious intent is to leave. Best for all to do it quickly . . . I'm disappointed . . . to say the least..." Ex. 9 (ellipses in original).

On Monday, August 29, MSNBC attorney Rob Landau spoke to Mr. Lindner's office about Plaintiff and reiterated Mr. Kaplan's earlier statements. Ex. 8 at 420. Mr. Lindner's logs of the conversation state: "they accepted resignation will end the contract and will stop paying her. she resigned and they accepted." *Id.*

On Tuesday, August 30, Mr. Landau spoke again with Mr. Lindner's office. Ex. 10; Ex. 8 at 420. As the detailed log of the conversation shows, Mr. Landau stated repeatedly that Plaintiff had quit in her August 23 email and that MSNBC had accepted her resignation. For instance, the log states: "Per claudia's Tuesday agu23 [sic] email to rick: time to discuss my exit (rob paraphrased cd's entire email) Rk accepted her resignmation [sic]." Ex. 10. Similarly, the call log states "don't need to give C extra notice This is over From her email RK wasn't going to try to convince her to stay Moving on." *Id.*

That evening, MSNBC sent a proposed separation agreement and release for Plaintiff to Mr. Lindner's office, after his office asked Mr. Landau whether MSNBC would preclude Plaintiff from working elsewhere. *See* Ex. 10 ("K asked if full release – RL said they had not thought it thru he would check – as far as he knows, full release Don't think they will keep her exclusive in cable or anything, but will check and send us release today"). The proposed release did not prevent Plaintiff from working elsewhere and stated in relevant part:

> THE COMPANY AND THE EMPLOYEE THEREFORE AGREE AS FOLLOWS: 1. *At the Employee's voluntary request, the Employee has resigned from the Company* and shall accordingly be taken off the Company's payroll as of Friday, September 2, 2005.

Ex. 11 at 69 (capitalization in original) (emphasis added).

Karen Wang Lavelle, another agent in Mr. Lindner's office, spoke to Plaintiff in the evening of August 30 about Plaintiff's emails to Mr. Kaplan. The detailed log of this conversation reflects that Plaintiff said: "I was letting Rick Kaplan know that I was not going to be avail for the 2nd year of my contract. I was giving him ample notice for the 2nd year, that I was not coming back." Ex. 12 at 65. Plaintiff also said that she "wrote him the e-mail to let them know that after the first year is over she will be leaving and that is all the e-mail was stating." *Id.* Further, the log records Plaintiff stating: "I am giving them the year I committed to

and then I am exercising my out." *Id.* at 66.  Finally, Plaintiff said: "I was only e-mailing to let

him know that I was not going to be there in the 2 year.  I was doing the right thing so they

would have notice." *Id.*

 The next day, August 31, Plaintiff sent a final email to Mr. Kaplan, on which she copied

her agent. *See* Ex. 13.  In this email, she wrote: "It was my intention to give you long-term

notice that I was terribly disappointed in the way I was treated and was not planning on returning

for the second year of my contract." *Id.* at 40.

 Consistent with his agency's detailed records, Mr. Lindner testified that as of August 23,

2005, Plaintiff was unhappy at MSNBC and told him that she had decided to advise MSNBC

that she was leaving the network.  Lindner Dec. at ¶ 4; Ex. 5.  Later, Plaintiff maintained that she

had not "resigned," but that she had simply advised MSNBC that she would not be returning for

the second year of her contract.  Lindner Dec. at ¶ 4; Ex. 12.  At no time did Plaintiff *ever* tell her

agent's office that she was interested in staying, or willing to stay, at MSNBC longer than

beyond her first contract year.  Lindner Dec. at ¶ 4 (emphasis added); Ex. 12.

 Mr. Kaplan interpreted Plaintiff's August 23 and 24 emails as a resignation.  Ex. 14 at

10-21, 27-32, 52-55; Ex. 8 at 419-421; Exs. 9-10.   For instance, he testified that: "the [August

23] e-mail read very clearly, to me, that she quit."  Ex. 14 at 20:7-15.  Mr. Kaplan also decided

that it would be better for the company if Plaintiff left sooner rather than later, given her obvious

unhappiness.  Ex. 14 at 63-64; Ex. 9.  Accordingly, Mr. Kaplan directed that Plaintiff be

removed from the payroll in early September.  Ex. 14 at 51-53; Exs. 10-11.

 In September 2005, Plaintiff retained an attorney to represent her.  Through her attorney,

Plaintiff began requesting all of the money left on the Contract, including for year two.

Rikelman Dec. ¶ 23.  In response, MSNBC sent Plaintiff, and Plaintiff received, a Notice dated

November 14, 2005.  Ex. 15.  The Notice referred to the Contract and stated in relevant part:

> In addition to its other rights, MSNBC reserved the unilateral right to terminate this Agreement at the end of the first cycle by giving Artist written notice not less than sixty (60) days prior to the end of such cycle.
>
> Artist resigned from her employment at MSNBC obviating the need for MSNBC to provide notice to terminate the Agreement.  Whereas Artist, through her designated representative(s), is now attempting to deny any such resignation, MSNBC, while rejecting Artist's denial and while reserving all rights and defenses, hereby provides such notice to Artist.

*Id.*

## II.      The Internet Postings

The Complaint identifies three internet postings about Plaintiff, dated August 31, September 1, and September 4, respectively.  Compl. ¶¶ 51-53.  There is no direct evidence linking any of the MSNBC Defendants to these Internet postings about Plaintiff.  Ex. 1 at 258-266; Exs. 16, 17, 18.  Mr. Leon and Mr. Kaplan testified unequivocally that they had nothing to do with these postings.  Ex. 19 at 345-46, 354-57; Ex. 14 at 64-67, 73-77.

By the time of the first posting on Inside Cable, on August 31, 2005, Plaintiff had told at least nine people outside MSNBC about the substance of her August emails with Mr. Kaplan and had even sent them copies of her emails.  *See* Ex. 1 at 188-191, 271-273, 281; Exs. 6, 10, 12, 20.

By the time of the News Blues posting, on September 1, Ex. 18, approximately 80,000 people could have seen the August 31 Inside Cable posting, which said that Plaintiff had quit MSNBC in the middle of her contract.  Compl. ¶ 54 (stating that Inside Cable reaches 80,000 people).  By the time of the TVSpy posting on September 4, Ex. 17, approximately 80,000 people could have read the first two postings and been aware that Plaintiff had left MSNBC.  *Id.*

### III.    Procedural History And The Second Circuit's Opinion In This Case

In May 2006, Plaintiff sued MSNBC, and its employees Rick Kaplan, Scott Leon, and Cassandra Brownstein, in New York State court for claims arising out of her departure from the company. In June 2006, MSNBC removed the case to this Court. Thereafter, all defendants moved to dismiss the Complaint.

On March 29, 2007, the Court granted the motions in part, dismissing Plaintiff's claims for tortious interference, defamation and breach of contract, as well as the related portion of her New York Labor Law claim. *See DiFolco*, 2007 WL 959085, at * 10. The Court also dismissed all claims against Brownstein for insufficient service of process. *Id.* at * 8. Thereafter, Plaintiff voluntarily dismissed her breach of the covenant of good faith and fair dealing claim.

Plaintiff appealed to the Second Circuit *only* from the portion of the Order dismissing claims against MSNBC, Scott Leon, and Rick Kaplan. Thus, Brownstein has not been a defendant in this case since 2007.

On appeal, Plaintiff argued that dismissal was inappropriate "without the benefit of a fully-developed record." Pl.'s Appeal Reply Br. at 9. She conceded that the words in her August 2005 emails to Mr. Kaplan should not "be disregarded in favor of some undisclosed mental purpose or intent in sending these communications." *Id.* at 13. But she argued that her words were at least subject to interpretation, and she claimed that "securing the chance to have [] discussions . . . was the clear purpose of her emails to Kaplan and at no point" did she "communicate a clear intention not to perform under her employment contract." *Id.* at 12.

The Second Circuit accepted as true, for the purposes of the appeal, Plaintiff's allegations that she did not want to leave MSNBC. *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Based on this unproven assumption, the Second Circuit found that the August

23 email could be interpreted as "indicative of [Plaintiff's] desire to get out from under the direction of the people with whom she had problems rather than leaving MSNBC altogether." *Id.* at 112. The court further held that Plaintiff should have the opportunity to establish in discovery that she never communicated a plan to leave, and that Mr. Kaplan put a "spin" on her August 23 email "in an attempt to rid MSNBC of an employee he considered troublesome." *Id.*

The Second Circuit did *not* hold that, regardless of any evidence that might be uncovered in discovery, Plaintiff was entitled to a trial on her contract claim. And it certainly did not hold that if discovery overwhelmingly contradicted Plaintiff's claim – and instead revealed dozens of documents showing that Plaintiff had every intention of leaving her contract early – that summary judgment would be inappropriate. Instead, the court merely found that repudiation "has not been established as a matter of law" on the minimal record before it. *Id.* at 113.

## ARGUMENT

### I.    Summary Judgment Standard

The Court should grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The non-moving party cannot avoid summary judgment simply by "show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further, mere speculation and conjecture are not enough to bring a case to a jury. *See, e.g., Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2002).

**II.     The Court Should Grant Summary Judgment To MSNBC On Plaintiff's Breach Of Contract Claim Because Plaintiff Repudiated The Contract**

    **A.     It Is Undisputed That Plaintiff Wrote The Emails To Make Mr. Kaplan Believe She Was Leaving MSNBC**

The undisputed evidence shows that Plaintiff wrote the August 2005 emails to Mr. Kaplan so that he would believe that she wanted to leave, which she had no legal right to do.

It is law of the case that the Contract required Plaintiff to "be at MSNBC's disposal for a two-year period," and that Plaintiff did not have the contractual right to leave MSNBC after one year. *See DiFolco*, 2007 WL 959085, at * 3. Indeed, Plaintiff conceded at her deposition that she had no right to leave after the first year. Ex. 1 at 93-96. The Second Circuit did not overturn, or even address, the Court's ruling on this issue. *DiFolco*, 622 F.3d at 111-114.

Rather, the Second Circuit held that one possible interpretation of Plaintiff's statements that she wanted to "'discuss her exit from the shows' and to give MSNBC "'ample time to replace her'" was that she wished "to get out from under the direction of the people with whom she had problems rather than leaving MSNBC altogether." *DiFolco*, 622 F.3d at 112. The court allowed Plaintiff to conduct discovery to support this interpretation of her August emails.

However, Plaintiff herself denied this interpretation of her words during discovery. She testified that, when she wrote the August 23 email to Mr. Kaplan, she did not want to get out from under the direction of Scott Leon by exiting the two shows on which she worked. Ex. 1 at 173:4-7 (Q: When you wrote that you wanted to discuss your exit from the shows, that wasn't true? A: No.); *see also id.* at 171:5-7.

Instead, Plaintiff said repeatedly in her deposition that she chose the words in her August 2005 emails so that Mr. Kaplan would believe that she was leaving MSNBC altogether because she thought that was the best way to get his "attention." Ex. 1 at 169-179. For instance, Plaintiff

testified about the August 23 email as follows:

> Q:  So is it your testimony here today under oath that you didn't tell [Mr. Kaplan]
> that you were planning to leave at the end of your contract, the first year of your
> contract?
> A:  I wanted him to believe that there could have been that possibility, because I
> wanted him to take me seriously and fix the problems.
> …
> Q:  So you were hoping that you would get Rick Kaplan's attention by telling him
> that you were leaving?
> A:  That things had been so bad at work that yes, that's what it had possibly come
> down to.

Ex. 1 at 169:19-170:3, 173:24-174:5.  Plaintiff testified similarly about her August 24 email:

> Q:  My question is: Are the words 'giving notice' in your e-mail inaccurate?
> (Objection)
> A:  It's what I wanted him to believe.
> Q:  You wanted [Mr. Kaplan] to believe that you were giving notice?
> A:  Yes.  And I wanted him to respond and say what I knew.  You're not allowed
> to leave in the middle of your contract or before or during the first year, in the
> middle, or during the second year, and I wanted him to tell me and give me some
> reassurance, as he had done in the past, that he was going to take me seriously and
> fix the problems.

Ex. 1 at 179:13-180:5.

In short, Plaintiff conceded that she hoped to get Mr. Kaplan's attention *by writing the
emails so that he would believe that she was leaving.*  Thus, when Mr. Kaplan interpreted her
August emails as a resignation, he interpreted them exactly as Plaintiff had intended.

Plaintiff's purported claim that she subjectively never intended to leave is irrelevant.  The
law is clear that a court must analyze whether a repudiation occurred under an *objective*, not a
subjective, standard.  *See, e.g.*, *Record Club of Am., Inc. v. United Artists Records, Inc.*, 643 F.
Supp. 925, 939 (S.D.N.Y. 1986) (applying New York law and finding repudiation based in part
on letters), *vacated on other grounds*, 890 F.2d 1264 (2d Cir. 1989); Restatement (Second) of
Contracts § 250, cmt. b (whether language qualifies as repudiation is based on "reasonable
interpretat[ion]" and "fair reading" of that language).  Accordingly, whether Plaintiff's words

constituted a repudiation must be analyzed from the standpoint of a reasonable reader. *Record Club of Am.*, 643 F. Supp. at 939 (holding that "state of mind" or "good faith" of repudiating party is irrelevant).

Given Plaintiff's admissions that she chose her words to make Mr. Kaplan believe that she was leaving, and the undisputed evidence that Mr. Kaplan read her emails as a resignation, *see supra* at 6, there can be no genuine dispute about the objective meaning of Plaintiff's emails – that she planned to leave MSNBC, which had no contractual right to do.

Plaintiff's repudiation of the Contract discharged MSNBC from any further performance. *See, e.g.*, *Am. List Corp. v. U.S. News & World Report, Inc.*, 549 N.E.2d 1161, 1165 (N.Y. 1989); *Rochdale Vill., Inc. v. Pub. Serv. Employees Union*, 605 F.2d 1290, 1297 (2d Cir. 1979) (applying New York law). Accordingly, although MSNBC could have permitted Plaintiff to continue working until a date set by her, it had no legal obligation to do so. *See Computer Possibilities Unltd., Inc. v. Mobil Oil Corp.*, 747 N.Y.S.2d 468, 477 (N.Y. App. Div. 2002) (stating that when one party repudiates, other party may treat contract as terminated).

Instead, Mr. Kaplan was entirely within his rights to set a quicker departure date for Plaintiff. *See In re Eames*, 782 N.Y.S.2d 154, 155 (N.Y. App. Div. 2004) (employer's decision to "accept[] [employee's] resignation immediately [did] not convert the resignation into a discharge"). His decision that Plaintiff should leave MSNBC's employ within several weeks, rather than several months is simply not actionable as a breach of contract. Therefore, the Court should dismiss the breach of contract claim.[2]

---

[2] Plaintiff's claim under the New York Labor Law depends on her ability to establish a breach of the Contract by MSNBC. *Tierney v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700, 703 (N.Y. App. Div. 1993) (holding that to assert claim under New York Labor Law, plaintiff must have enforceable contractual right to wages and dismissing claim). Because Plaintiff's breach of contract claim is legally invalid, there is no legal merit to her New York Labor Law claim.

**B.    Plaintiff's Allegations About Her Subjective Intentions Are Not Legally Relevant And Cannot Create A Genuine Dispute Of Material Fact**

Plaintiff's assertions during this litigation about her *subjective* intentions are irrelevant. As Plaintiff conceded to the Second Circuit, the words she used in the emails cannot "be disregarded in favor of some undisclosed mental purpose or intent in sending these communications." Pl.'s Appeal Reply Br. at 13.   Indeed, Plaintiff's subjective intentions are not material to the objective analysis under repudiation.

Nevertheless, the contemporaneous documents are consistent and clear that Plaintiff's subjective intentions were to leave MSNBC by the end of her first contract year.   Between August 23 and 31, Plaintiff stated at least a dozen times that she wanted to leave MSNBC before her second year and never said anything to the contrary.   *See, e.g.*, Exs. 5, 12; Lindner Dec. ¶ 4.

For example, Mr. Lindner's logs for two calls on August 23, just hours after Plaintiff sent her first email to Mr. Kaplan, reflect the following statements by Plaintiff: "she decided she's leaving MSNBC" and "she expressed to rick kaplan that she's leaving." Ex. 5.

Importantly, even after Plaintiff learned from her agent on August 24 that Mr. Kaplan interpreted her email as a resignation, and was accepting her resignation effective as of September, she did *not* tell Mr. Kaplan that she never wanted to leave and hoped to stay for the entire two years of her contract.   Instead, on August 31, in her final email to Mr. Kaplan, she *confirmed* her plans to leave by the end of her first year.   She stated: "It was my intention to give you long-term notice that I was terribly disappointed in the way I was treated and *was not planning on returning for the second year of my contract*." Ex. 13 at 40 (emphasis added).

To the extent the Second Circuit saw potential ambiguity in Plaintiff's emails based on her statements such as "to be clear, i did not resign yesterday," discovery eliminated this potential ambiguity.   Plaintiff claimed in August 2005 that she had the right to leave after her

first year, and thus, that she was not "resigning" but merely "exercising [her] out" by advising MSNBC that she would not be returning for the second year.  Lindner Dec. at ¶ 4; Ex. 12 at 66. Therefore, the only dispute in August 2005 was when Plaintiff was leaving and how much longer MSNBC would keep her on the payroll; there was no dispute that she wanted to leave.  *Id.*

Based on this consistent and extensive documentary record, no fair-minded juror could conclude that Plaintiff had any subjective intention other than to leave MSNBC by the end of her first contract year when she wrote the August emails to Mr. Kaplan.  *See, e.g., Jeffreys v. The City of N.Y.,* 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment and finding that party's self-serving, and inconsistent, assertions during a deposition are not enough to create a genuine dispute of fact when they are "largely unsubstantiated by any other direct evidence").  Plaintiff's continued insistence "that there is some metaphysical doubt as to the material facts" is simply not enough to avoid summary judgment.  *See, e.g., Oparaji v. Atl. Container Line,* No. 07 Civ. 2124(GEL), 2008 WL 4054412, at * 4 (S.D.N.Y. Aug. 28, 2008) (granting summary judgment on breach of contract claim).

In any event, the Court need not determine Plaintiff's subjective intentions.  Only the objective meaning of her words is material – and Plaintiff conceded that she chose her words and wrote the emails to make Mr. Kaplan believe she was leaving, which she did not have the legal right to do.  She therefore repudiated the Contract.

**III.    Should The Court Find A Disputed Issue Of Material Fact Concerning Plaintiff's Repudiation, It Should Grant Partial Summary Judgment To MSNBC Limiting Damages To The Remainder Of The First Year Of The Contract**

Even if the Court finds a genuine issue of material fact concerning Plaintiff's repudiation of the Contract, it still should grant partial summary judgment to MSNBC limiting any damages to the wages owed under the remainder of the first year, which is less than $40,000.

The Contract states that its term would "be divided into two (2) consecutive cycles of fifty-two (52) weeks each." Ex. 2 at ¶ 4(a). It also states that MSNBC has "the right to terminate this Agreement effective at the end of the first cycle by giving Artist written notice not less than sixty (60) days prior to the end of such cycle." *Id.* Thus, the Contract gave MSNBC a unilateral right not to bring Plaintiff back for year two. *See Bartel v. NBC Universal, Inc.*, 543 F.3d 901, 904-05, 907 (7th Cir. 2008) (applying New York law, affirming grant of motion to dismiss, and ruling as matter of law that identical language in NBC employment contract unambiguously gives NBC unilateral right not to renew contract at end of cycle). After receiving letters from Plaintiff's attorney in the fall of 2005, MSNBC exercised this unilateral right.

Plaintiff apparently retained her current counsel's firm in September 2005. Rikelman Dec. at ¶ 23. After she did so, she began to request payment for both years one and two of the Contract. *Id.* Because of this change in position, Defendants' attorneys adopted a belt and suspenders approach and exercised MSNBC's unilateral right to end the Contract after year one.

On November 14, 2005, MSNBC issued a Notice to Plaintiff under the Contract, signed by NBC attorney Rob Landau. The Notice stated that Plaintiff had resigned from her employment at MSNBC. Ex. 15. The Notice further read that, because Plaintiff was "now attempting to deny any such resignation," MSNBC was exercising its unilateral right to end the Contract after the first cycle, while "rejecting [Plaintiff's] denial and while reserving all rights and defenses." *Id.* The Notice was issued in the appropriate time frame under the Contract. *Id.*

Therefore, even if the Court should find a genuine dispute about the repudiation, at most, MSNBC would owe Plaintiff the remainder of the money on year one. For this reason, summary judgment should be granted denying Plaintiff any right to recover under year two.

**IV.    The Court Should Grant Summary Judgment To Defendants On The Defamation
Claim Because Plaintiff Has No Competent Evidence To Support Her Claim**

Plaintiff also claims that Rick Kaplan and Scott Leon are liable for defamation based

upon statements posted between late August and early September 2005 on three public websites

about the entertainment industry.  Mr. Kaplan and Mr. Leon have unequivocally denied making

the statements at issue.  Plaintiff's only basis for suing them is her "common sense."  Ex. 1 at

262-66.  The Court should grant summary judgment on this claim because Plaintiff has no

competent evidence linking them to these postings and instead relies entirely on conjecture and

surmise, which is legally insufficient.  *See e.g.*, *Niagara*, 315 F.3d at 175; *Oparaji*, 2008 WL

4054412, at * 4 (absence of evidence is appropriate basis for summary judgment to defendant).

On August 31, 2005, the entertainment industry website Inside Cable reported, without

identifying any source, that Plaintiff had resigned from MSNBC "in the middle of her contract."

Ex. 16.  On September 1, another entertainment website, News Blues, reported that "[l]uscious

Claudia DiFolco has quit MSNBC in the middle of her contract, leaving Sharon Tay as the sole

host of 'Entertainment Hotlist' and 'At the Movies.'"  Ex. 18 at 52.  Again, no source was

provided, but the August 31 Inside Cable posting had already been available online.

On September 4, 2005, after the other two postings had been available on the web for

several days, an anonymous post appeared on the "Watercooler" section of the TVSpy

entertainment website.  The title was "Scott Leon real deal, DiFolco DeFecto."  It stated:

> Scott Leon, Difalco's experienced EP at MSNBC . . . produced at CBS Network,
> was EP of Style with Elsa Stench on CNN, EP of CNN's Showbiz Show, EP of
> Fox's Good Day New York and has always been loved and respected by his loyal
> staffs.  He's a rare TV veteran, who still constantly has fresh ideas and heart.  He
> has a temper, that appears rarely to those that simply don't do their jobs . .
> Claudia DiFolco, is one of the new breed of journalists who believes that
> cleavage, over time [sic] in the make up chair and a huge desire to become a star
> (instead of reporting on them,) is how you pay your dues.  I have heard that
> throughout her irrelevant career at MSNBC, she constantly ignored directions

from news producers during live shots, refused to do alternate takes for editing purposes, pouted like a spoiled child and never was a team player. Even the consumate [sic] professionalism of Leon and Sharon Tay, couldn't rub off on DiFolco. She was difficult in Phoenix, difficult in Secaucus, and reporters don't change their spots!

Ex. 17 (ellipses in original).

### A.   Plaintiff Has No Competent Evidence Linking Defendants To The Postings

Because Plaintiff lacks any direct evidence to support her defamation claim, she attempts to rely on circumstantial evidence and makes two arguments. She contends that the MSNBC Defendants "must have been the source" of the postings because only they knew about her contract dispute, and she claims that the text of the TVSpy post points to Scott Leon as its author.

Both of these arguments are meritless. First, contrary to the allegations in the Complaint, Compl. ¶ 49, discovery has established that *numerous* people outside of MSNBC knew of Plaintiff's communications with Mr. Kaplan and even had copies of their emails by August 31, the date of the first posting. *See supra* at 7. These individuals included at least six staff members of Ken Lindner & Associates, Plaintiff's sister, fiancé and a close personal friend. *Id. Any* of these individuals could have innocently mentioned the events to a friend or colleague, and the information could have spread more widely. Thus, the circumstantial evidence contradicts Plaintiff's claim that Rick Kaplan or Scott Leon were the only possible source for the postings.

Additionally, once the first posting appeared on August 31, at least 80,000 individuals in the television industry would have been aware of it and could have contacted friends or colleagues for more information. On such evidence, there is no factual basis for Plaintiff's assertions that only a "select group" of individuals had access to the relevant information.

The Court granted summary judgment dismissing a defamation claim on similar facts in *Riisna v. ABC*, 219 F. Supp.2d 568 (S.D.N.Y. 2002). Like here, the former employee in *Riisna*

had no direct evidence that the defendants had made the alleged statements. *Id.* at 573. The court found that her claim that ABC was the "only possible source" of the statements had "too many holes . . . to warrant a trial." *Id.* at 574. Plaintiff's claim here is even weaker. In *Riisna*, the court dismissed the defamation claim because the evidence was silent on whether other individuals had the relevant information to make the statements. *Id.* at 575. By contrast, the evidence in this case affirmatively demonstrates that Plaintiff shared the key facts with numerous individuals outside MSNBC, and thus that others did have the relevant information.

Second, the text of the September 4 TVSpy posting does not point to Mr. Leon as its author; instead, it reads as if it were written by someone *who did not work at MSNBC*. The posting states: "I have heard that throughout her irrelevant career at MSNBC, [Plaintiff] constantly ignored directions . . . ." Ex. 17. The words "I have heard" indicate that the author lacks first-hand knowledge of Plaintiff's time at MSNBC. At its end, the posting asserts that "[Plaintiff] was difficult in Phoenix," suggesting that the author may have become familiar with Plaintiff at her previous job in Arizona. Ex. 1 at 9-10.

Further, the posting's title, "Scott Leon real deal, Difolco DeFecto," implies that the author may have been responding to a previous message on the Watercooler board about Plaintiff and/or Mr. Leon. However, Plaintiff has failed to produce any evidence about the context in which the posting appeared. Thus, her arguments about the text are unsupported and speculative.

Finally, it is important to note that Plaintiff chose not to request direct evidence from the websites about the source(s) of these postings. Discovery established that she made no attempts whatsoever to obtain information from Inside Cable and News Blues. Plaintiff did send a subpoena to TVSpy, but not until early 2006, five months after the posting appeared and long after the website had ceased to retain the relevant information. Ex. 21.

In short, Plaintiff has utterly failed to meet her burden of proof and to justify a jury trial on her defamation claim. Scott Leon and Rick Kaplan testified without qualification that they had nothing to do with these postings, and Plaintiff has no competent evidence controverting their testimony. *See, e.g., Niagara*, 315 F.3d at 177 (affirming grant of summary judgment where plaintiff had no "evidentiary basis to dispute the sworn denials" of defendants' employees); *Garcia v. Puccio*, 62 A.D.3d 598, 599 (1st Dep't 2009) (granting summary judgment to defendant on defamation claim where plaintiff failed to controvert defendant's testimony that she did not make statements); *Schulman v. Cont'l Ins.*, 258 A.D.2d 639, 640-41 (2d Dep't 1999) (same). Therefore, the Court should grant summary judgment.

## B.     The First Two Statements Are Not Actionable

Additionally, the first two Internet postings are not actionable as a matter of law. *See Immuno AG. v. J. Moor-Jankowski*, 567 N.E.2d 1270, 1282 (N.Y. 1991) (stating that disposition as matter of law is particularly appropriate in libel cases). The first posting reported that Plaintiff had resigned from MSNBC "in the middle of her contract." Ex. 16. The second similarly stated that "[l]uscious Claudia DiFolco has quit MSNBC in the middle of her contract." Ex. 18.

Both of these statements are true because the undisputed evidence shows that Plaintiff decided to leave MSNBC at the end of her first contract year. *See supra* at Part II. Given that she had signed a two-year contract, she was resigning "in the middle of her contract." Truth is a complete defense to a defamation claim. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301-02 (2d Cir. 1986) (finding that allegedly defamatory statement was substantially true); *see also Dillon v. City of N.Y.*, 704 N.Y.S.2d 1, 6 (N.Y. App. Div. 1999) (dismissing defamation claim because statements by employer that it had terminated employee were true).

Further, the first two statements are not actionable because they are not defamatory.

19

"'[W]hether particular words are defamatory presents a legal question to be resolved by the court in the first instance and if not reasonably susceptible of a defamatory meaning, [the words] are not actionable and cannot be made so by a strained or artificial construction.'" *Golub v. Enquirer/Star Grp., Inc.*, 681 N.E.2d 1282, 1283 (N.Y. 1997) (internal citations omitted). The statements that Plaintiff had "resigned" or "quit" her job are not defamatory because they did not "'expose [her] to public hatred, contempt or aversion, or . . . induce an evil or unsavory opinion of [her] in the minds of a substantial number of the community.'" *Id.* (internal citations omitted).

The first two postings said nothing about Plaintiff's competence as a reporter. Thus, they did not defame Plaintiff because they were entirely compatible "with the proper conduct of the . . . . profession . . . itself." *Liberman v. Gelstein*, 605 N.E.2d 344, 348 (N.Y. 1992).

Indeed, courts have refused to find statements discussing an employee's resignation to be defamatory, absent some connotation of employee misconduct. *See, e.g., Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 286-88 (S.D.N.Y. 2006) (applying New York law and finding statement that employee left for "personal reasons" not defamatory). As courts have explained, it would "strain[] common sense to . . . interpret the statement that an individual resigned . . . as a defamatory statement [because] [r]esignations are a common practice in the workplace and may be due to any number of reasons including [] better job opportunities," *Culverhouse v. Cooke Ctr. for Learning & Dev., Inc.*, 675 N.Y.S.2d 776, 780-81 (N.Y. Sup. Ct. 1998), or because of changes in finances or health. *Qureshi*, 430 F. Supp. 2d at 287.

## CONCLUSION

Plaintiff has failed to prove what the Second Circuit gave her the chance to prove and summary judgment is warranted.

Dated:  June 10, 2011
        New York, New York


                                    _Julie Rikelman_
                                    Julie Rikelman
                                    NBCUniversal Media, LLC
                                    30 Rockefeller Plaza, Rm. 1011E
                                    New York, N.Y. 10112
                                    (212) 664-4167 (phone)
                                    (212) 664-6572 (fax)

                                    Counsel for Defendants

21